1

**BURSOR & FISHER, P.A.**
Yeremey O. Krivoshey (SBN 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ykrivoshey@bursor.com

2

3

4

5

6

*Attorneys for Plaintiffs*
*(additional counsel on signature page)*

7

8

9                    **UNITED STATES DISTRICT COURT**

10                    **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| ROBIN MUKADAM, ANASTASIA OVERTON, HEIDI WOLLERMAN, SHARA JONES, MARGARET HOLT, ALISON NIBBELINK, JOHN KRESL, and BEN ROBERSON on Behalf of Themselves and All Others Similarly Situated, | Case No.   2:23-cv-10514 |
| | **CLASS ACTION COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| GEORGE THOMAS DAVE and GT'S LIVING FOODS, LLC, | |
| Defendants. | |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiffs Robin Mukadam, Anastasia Overton, Heidi Wollerman, Shara Jones, Margaret Holt, Alison Nibbelink, John Kresl, and Ben Roberson, ("Plaintiffs"), bring this action on behalf of themselves and all others similarly situated against Defendant George Thomas Dave ("GT Dave") and Defendant GT's Living Foods, LLC ("GT's Living Foods") (collectively, "Defendants").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## INTRODUCTION

1.       Defendant GT Dave is the founder and chief executive officer of Defendant GT's Living Foods and remains the sole owner of the company.  GT's Living Foods has passed off millions of bottles of its wildly successful "Enlightened" Kombucha[1] and "Synergy" Kombucha[2] beverages (collectively "Kombucha Beverages") as non-alcoholic, when, in fact, the beverages contain 18 to

---

[1] Enlightened Kombucha refers to every flavor of Defendants' Enlightened Synergy and Enlightened Kombucha beverages sold nationwide, as described herein, including, but not limited to, the following flavors: Original, Gingerade, Laveder Love, Hibiscus Ginger, Lemonade, Multi-Green, Bilberry Blessing, Cayennade, Tantric Turmeric, Heart Beet, Golden Sage, Cucumber Mint Lime, Karma Citra, Koffee, Strawberry Lemonade, Pomegranate Power, Rose Berry, Pink Lady Basil, Watermelon Wonder, Trilogy, Mystic Mango, Cosmic Cranberry, Guava Goddess, Gingerberry, Passionberry Bliss, Strawberry Serenity, Cherry Chia, Grape Chia, Raspberry Chia, and Black Chia.  The various flavors of Enlightened Kombucha are substantially identical other than their flavor profile, as each flavor is above the 0.5 percent alcohol by volume threshold and understates the amount of sugar in the beverages.  None of the flavors has the requisite government warning required for alcoholic beverages.

[2] The Synergy product line was formerly called "Enlightened" until mid-2020.  Yet some Synergy products were still being sold with the word "ENLIGHTENED" on the products' labels within the class period, making the distinction between the "Enlightened" and "Synergy" lines even less salient.  *See* GT's Enlightened Kombucha's page on Amazon, https://www.amazon.com/GTS-ENLIGHTENED-KOMBUCHA-Synergy-Kombucha/dp/B078J5JW6G (last accessed December 4, 2023).  As such, the "Enlightened" and "Synergy" lines are used interchangeably throughout this Complaint unless otherwise noted.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                          1

442 percent more alcohol than the legal limit for non-alcoholic beverages.  Having been caught selling alcoholic kombucha beverages to unsuspecting customers in 2006 and 2010, Defendants GT Dave and GT's Living Foods decided to market and distribute an alcoholic version of its kombucha products (the "Classic" kombucha line) and a so called "non-alcoholic" version (the "Enlightened" or "Synergy" line), knowing that omitting information on true alcohol content to give the impression there is a non-alcoholic line provides much greater market appeal and enables sales in far more retail locations.  But the purported distinction between the "Classic" and "Enlightened" lines is a sham designed to confuse the public and government regulators, as both lines of products contain alcohol levels far surpassing the legal limit for non-alcoholic beverages.

2.      Defendants' Kombucha Beverages are mislabeled as non-alcoholic, mispresenting the true alcoholic content of the products to consumers.  By failing to disclose the true alcoholic nature of Kombucha Beverages, Defendants engaged, and continue to engage, in the unlawful sale of alcohol to people of all ages, including those under the age of 21 and those who should not consume alcohol for personal and/or health reasons.

3.      Thousands of individual retail stores located throughout the country sell Kombucha Beverages to consumers, including in various States where Plaintiffs live and/or purchased Kombucha Beverages.

4.      Plaintiffs purchased numerous bottles of Kombucha Beverages based on Defendants' misleading advertising and labeling of the products.

5.      Plaintiffs seek relief in this action individually, and on behalf of all purchasers of Kombucha Beverages, for Defendants' violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, *et seq.*, Massachusetts' Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A, § 2(a), Virginia Consumer Protection Act ("VCPA"), Va. Code §§ 59.1-

198, 59.1-200, and 59.1-204., Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/1 *et seq.*, Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws §§ 445.901, *et seq.*,  Oregon Unlawful Trade Practices Act ("OUTPA"), Or. Rev. Stat. §§ 646.605, *et seq.*, Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. §§ 201-1, *et seq.*, and Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code §§ 1345.01, *et seq.*, violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961-1968, for breach of express and implied warranties, fraud, and unjust enrichment.

## PARTIES

6.      Plaintiff Robin Mukadam is a citizen of Florida, residing in Panama City.  Between 2020 until early 2022, Ms. Mukadam has purchased Enlightened Kombucha every month in most flavors, favoring Trilogy in particular.  Plaintiff Mukadam purchased Kombucha Beverages at Publix and Walmart in Panama City, Florida.  Plaintiff Mukadam purchased the products with the belief and on the basis that the products were non-alcoholic.  The labels of the Kombucha Beverages she purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the beverages' high alcohol content.  Plaintiff Mukadam did not have to show any identification of her age in order to purchase the Kombucha Beverages products. The Kombucha Beverages were displayed in a section separate from other alcoholic beverages at the retail locations at which she made her purchases.  Plaintiff Mukadam would not have purchased the products at the time had she known that they contained significant levels of alcohol and were considered alcoholic beverages.

7.      When Plaintiff Mukadam consumed the Kombucha Beverages she purchased, she felt the alcohol.  However, because Kombucha Beverages is marketed as a non-alcoholic beverage, she did not know that those feelings were in fact from the alcohol in Kombucha Beverages.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                              3

8.      During the relevant period, Plaintiff Mukadam had been sober and would not have risked breaking her sobriety by purchasing Kombucha Beverages had she known that it contained elevated levels of alcohol.

9.      Plaintiff Mukadam will be unable to rely on Kombucha Beverages' labeling and advertising in the future, and so will be unable to purchase Kombucha Beverages in the future, although she would like to.  Plaintiff Mukadam does not currently purchase Kombucha Beverages, but intends on continuing purchasing kombucha products in the future.

10.     Plaintiff Anastasia Overton is a citizen of Florida, residing in Archer.  In 2021, Ms. Overton purchased at least five bottles of Kombucha Beverages a month in primarily the Gingerade flavor.  Plaintiff Overton purchased Kombucha Beverages at Publix in Gainesville, Florida.  Plaintiff Overton purchased the products with the belief and on the basis that the products were non-alcoholic.  The labels of the Kombucha Beverages she purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the Beverages' high alcohol content.  Plaintiff Overton did not have to show any identification of her age in order to purchase the Kombucha Beverages products.  The Kombucha Beverages were displayed in a section separate from other alcoholic beverages at the retail location at which she made her purchases.  Plaintiff Overton would not have purchased the products at the time had she known that they contained significant levels of alcohol and were considered alcoholic beverages.  Further, Plaintiff Overton would have paid significantly less for the products, or not have purchased them, had she known that the products mischaracterized the level of sugar in the bottles.

11.     When Plaintiff Overton consumed the Kombucha Beverages she purchased, she felt the alcohol.  However, because Kombucha Beverages is marketed as a non-alcoholic beverage, she did not initially know that those feelings were in

fact from the alcohol in Kombucha Beverages.  She eventually had to stop purchasing Kombucha Beverages because she felt too "buzzed" after drinking the product.

12.    Plaintiff Overton had been sober (had not knowingly consumed alcohol) since the beginning of the pandemic and would not have risked breaking her sobriety by purchasing Kombucha Beverages had she known that it contained spiked levels of alcohol. Indeed, the elevated levels of alcohol in the Kombucha Beverages caused Plaintiff Overton to relapse.

13.    Plaintiff Overton will be unable to rely on Kombucha Beverages' labeling and advertising in the future, and so will be unable to purchase Kombucha Beverages in the future, although she would like to.  Plaintiff Overton continues to purchase kombucha products, although she does not currently purchase Kombucha Beverages, and intends on continuing purchasing kombucha products in the future.

14.    Plaintiff Heidi Wollerman is a citizen of Missouri, residing in Jefferson City.  During the relevant period, however, Ms. Wollerman resided in Lynn, Massachusetts.  In December 2019 and January 2020, Ms. Wollerman purchased Kombucha Beverages primarily in the Trilogy flavor.  Plaintiff Wollerman purchased Enlightened Kombucha at Stop & Shop in Dedham, Massachusetts. Plaintiff Wollerman purchased the products with the belief and on the basis that the products were non-alcoholic.  The labels of the Kombucha Beverages she purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the Beverages' high alcohol content.  Plaintiff Wollerman did not have to show any identification of her age in order to purchase the Kombucha Beverages products.  The Kombucha Beverages were displayed in a section separate from other alcoholic beverages at the retail location at which she made her purchases.  Plaintiff Wollerman would not have purchased the products at the time had she known that they contained significant

levels of alcohol and were considered alcoholic beverages.  Further, Plaintiff Wollerman would have paid significantly less for the products, or not have purchased them, had she known that the products mischaracterized the level of sugar in the bottles.

15.     When Plaintiff Wollerman consumed the Kombucha Beverages she purchased, she experienced feeling "buzzed," as if from alcohol.  However, because Kombucha Beverages was marketed as a non-alcoholic beverage, she did not know that those feelings were in fact from the alcohol in Kombucha Beverages.

16.     Plaintiff Wollerman had previously been sober (had not knowingly consumed alcohol) during the relevant time period, particularly because she was pregnant during that time.  She would not have risked breaking her sobriety, or the health of her baby, by purchasing Kombucha Beverages had she known that it contained spiked levels of alcohol.

17.     Plaintiff Wollerman will be unable to rely on Kombucha Beverages' labeling and advertising in the future, and so will be unable to purchase Enlightened Kombucha in the future, although she would like to.

18.     Plaintiff Shara Jones is a citizen of Virginia, residing in Norfolk. Between 2020 and the end of 2021, Ms. Jones regularly purchased Kombucha Beverages, primarily the Gingerade flavor.  Plaintiff Jones purchased Kombucha Beverages at Whole Foods, Aldi, Walmart, and Costco in the Norfolk area.  Plaintiff Jones purchased the products with the belief and on the basis that the products were non-alcoholic.  The labels of the Kombucha Beverages she purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the Beverages' high alcohol content. Plaintiff Jones did not have to show any identification of her age in order to purchase the Enlightened Kombucha products.  The Kombucha Beverages were displayed in a section separate from other alcoholic beverages at the retail location at which she

made her purchases.  Plaintiff Jones would not have purchased the products at the time had she known that they contained significant levels of alcohol and were considered alcoholic beverages.  Further, Plaintiff Jones would have paid significantly less for the products, or not have purchased them, had she known that the products mischaracterized the level of sugar in the bottles.

19.     When Plaintiff Jones consumed the Kombucha Beverages she purchased, she felt the alcohol.  However, because Kombucha Beverages is marketed as a non-alcoholic beverage, she did not know that those feelings were in fact from the alcohol in Kombucha Beverages.

20.     Plaintiff Jones had been sober and was purposely avoiding the consumption of alcohol during the time period in question and would not have risked breaking her sobriety by purchasing Kombucha Beverages had she known that it contained spiked levels of alcohol.  Additionally, Plaintiff Jones was participating in the "Whole 30," a program designed to help subscribers eliminate diet that involves avoiding certain foods that may cause inflammation and cravings.

21.     Plaintiff Jones will be unable to rely on Kombucha Beverages' labeling and advertising in the future, and so will be unable to purchase Enlightened Kombucha during future periods of sobriety, although she would like to.  Plaintiff Jones continues to purchase other kombucha products and intends on continuing purchasing kombucha products in the future.

22.     Plaintiff Margaret Holt is a citizen of Illinois, residing in Wheaton. Between 2020 and the beginning of 2022, Ms. Holt purchased Kombucha Beverages two to three times a week in at least the following flavors: Original, Multi-Green, and Guava Goddess.  Plaintiff Holt purchased Kombucha Beverages at Whole Foods and Food 4 You in the Wheaton area.  Plaintiff Holt purchased the products with the belief and on the basis that the products were non-alcoholic.  The labels of the Kombucha Beverages she purchased did not bear a government warning concerning

the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the Beverages' high alcohol content.  Plaintiff Holt did not have to show any identification of her age in order to purchase the Kombucha Beverages products. The Kombucha Beverages were displayed in a section separate from other alcoholic beverages at the retail location at which she made her purchases.  Plaintiff Holt would not have purchased the products at the time had she known that they contained significant levels of alcohol and were considered alcoholic beverages. Further, Plaintiff Holt would have paid significantly less for the products, or not have purchased them, had she known that the products mischaracterized the level of sugar in the bottles.

23.    Plaintiff Holt will be unable to rely on Kombucha Beverages' labeling and advertising in the future, and so will be unable to purchase Enlightened Kombucha in the future.

24.    Plaintiff Alison Nibbelink is a citizen of Michigan, residing in Zeeland. Between 2020 and 2021 Plaintiff Nibbelink purchased Kombucha Beverages 8-10 times in at least the following flavors: Trilogy.  Plaintiff Nibbelink purchased Enlightened Kombucha at Meijer in Holland, Michigan.  Plaintiff Nibbelink purchased the products with the belief and on the basis that the products were non-alcoholic.  The labels of the Kombucha Beverages she purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the beverages' high alcohol content. Plaintiff Nibbelink did not have to show any identification of her age in order to purchase the Kombucha Beverages products.  The Kombucha Beverages were displayed in a section separate from other alcoholic beverages at the retail locations at which she made her purchases.  Plaintiff Nibbelink would not have purchased the products at the time had she known that they contained significant levels of alcohol and were considered alcoholic beverages.  Further, Plaintiff Nibbelink would have

paid significantly less for the products, or not have purchased them, had she known that the products mischaracterized the level of sugar in the bottles.

25.     Plaintiff Nibbelink was under the age of 21 when she first purchased Kombucha Beverages.  Had Kombucha Beverages been properly labeled as an alcoholic beverage, it would have been illegal for her to purchase the beverages. Because Enlightened Kombucha is an alcoholic beverage, it was unlawful for Defendant to manufacture and label the beverage as a non-alcoholic product and cause the beverage to be sold to Plaintiff Nibbelink.  At the time of the relevant purchases, Plaintiff Nibbelink could not lawfully purchase alcoholic beverages, and, accordingly, would not have purchased Enlightened Kombucha had she known that it is an alcoholic beverage.

26.     Plaintiff Nibbelink will be unable to rely on Kombucha Beverages' labeling and advertising in the future, and so will be unable to purchase Kombucha Beverages in the future, although she would like to.  Plaintiff Nibbelink continues to purchase kombucha products and intends on continuing purchasing kombucha products in the future.

27.     Plaintiff John Kresl is a citizen of California and currently resides in Los Angeles.  During the relevant period, Plaintiff Kresl also resided in Brooklyn, New York, and in Oregon State. Between early 2020 and April 2022 Plaintiff Kresl purchased Enlightened Kombucha in at least the following flavors: Gingerade, Guava Goddess, Watermelon Wonder, and Trilogy.  Plaintiff Kresl purchased more than 100 bottles of Enlightened Kombucha at New Seasons stores in Oregon, and from Whole Foods stores in New York between 2020 to 2022.  Plaintiff Kresl purchased the products with the belief and on the basis that the products were non-alcoholic.  The labels of the Kombucha Beverages he purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the beverages' high alcohol content.

Plaintiff Kresl did not have to show any identification of his age in order to purchase the Kombucha Beverages products. The Kombucha Beverages were displayed in a section separate from other alcoholic beverages at the retail locations at which he made his purchases. Plaintiff Kresl would not have purchased the products at the time had he known that they contained significant levels of alcohol and were considered alcoholic beverages.

28.     Plaintiff Kresl was under the age of 21 when he first purchased Kombucha Beverages. Had Kombucha Beverages been properly labeled as an alcoholic beverage, it would have been illegal for him to purchase the beverages. Because Kombucha Beverages is an alcoholic beverage, it was unlawful for Defendant to manufacture and label the beverage as a non-alcoholic product and cause the beverage to be sold to Plaintiff Kresl. At the time of the relevant purchases, Plaintiff Kresl could not lawfully purchase alcoholic beverages, and, accordingly, would not have purchased Kombucha Beverages had he known that it is an alcoholic beverage. Further, Plaintiff Kresl would have paid significantly less for the products, or not have purchased them, had he known that the products mischaracterized the level of sugar in the bottles.

29.     Plaintiff Kresl will be unable to rely on Kombucha Beverages' labeling and advertising in the future, and so will be unable to purchase Kombucha Beverages in the future, although he would like to. Plaintiff Kresl continues to purchase kombucha products, although he does not currently purchase Kombucha Beverages, and intends on continuing purchasing kombucha products in the future.

30.     Plaintiff Ben Roberson is a citizen of Pennsylvania, residing in Pittsburgh. Mr. Roberson purchased about multiple bottles of Kombucha Beverages in primarily the Trilogy flavor between 2020-2022. Plaintiff Roberson purchased Kombucha Beverages at Aldi stores in Pittsburgh and the State of Ohio. Plaintiff Roberson purchased the products with the belief and on the basis that the products

were non-alcoholic.  The labels of the Kombucha Beverages he purchased did not bear a government warning concerning the consumption of alcoholic beverages, nor any other clear or conspicuous warning regarding the beverages' high alcohol content.  Plaintiff Roberson did not have to show any identification of his age in order to purchase the Kombucha Beverages products.  The Kombucha Beverages were displayed in a section separate from other alcoholic beverages at the retail location at which he made his purchases.  Plaintiff Roberson would not have purchased the products at the time had he known that they contained significant levels of alcohol and were considered alcoholic beverages.  Further, Plaintiff Roberson would have paid significantly less for the products, or not have purchased them, had he known that the products mischaracterized the level of sugar in the bottles.

31.    Plaintiff Roberson typically purchased and consumed Kombucha Beverages while on road trips or running errands via his car.  Had he known that Kombucha Beverages contained spiked levels of alcohol, he would never have purchased.

32.    Plaintiff Roberson will be unable to rely on Kombucha Beverages' labeling and advertising in the future, and so will be unable to purchase Kombucha Beverages in the future, although he would like to.  Plaintiff Roberson continues to purchase kombucha products, although he does not currently purchase Kombucha Beverages, and intends on continuing purchasing kombucha products in the future.

33.    Defendant GT Dave is a resident of Beverly Hills, California. Defendant GT Dave is the founder and the chief executive officer of Defendant GT's Living Foods, which he also solely owns.  In those capacities, Defendant GT Dave oversees and exercises control over the day-to-day operations and activities of Defendant GT's Living Foods, including its marketing and labeling practices. Defendant GT Dave is thus individually responsible for the conduct of Defendant

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    11

GT's Living Foods and the continuing violations of federal and state laws alleged in this Complaint.

34.    Defendant GT's Living Foods is a Delaware corporation headquartered at 4646 Hampton St., Vernon, California 90058.  GT's Living Foods manufactures, advertises, sells, distributes, and markets Kombucha Beverages as alleged herein nationwide, including in various States where Plaintiffs live and/or purchased Kombucha Beverages.

35.    Defendants' misleading marketing, advertising and product information concerning the sugar and alcohol content in Kombucha Beverages was conceived, reviewed, approved, and otherwise controlled from Defendants' California headquarters.  Defendants' misleading marketing concerning the alcohol and sugar content of Kombucha Beverages was coordinated at, emanated from, and was developed at GT Living Foods' California headquarters.  All critical decisions regarding the misleading sugar and alcohol marketing of Kombucha Beverages were made in California.

## JURISDICTION AND VENUE

36.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class and subclasses are in excess of $5,000,000, exclusive of interest and costs, and most Plaintiffs, as well as most members of the proposed classes, are citizens of states different from the state of Defendants.  Defendants have sold hundreds of thousands, if not millions, of bottles of Kombucha Beverages.  In addition, this Court has subject matter jurisdiction under Section 1964(c) of RICO, 18 U.S.C. § 1964(c), and 28 U.S.C. § 1331 (federal question).

37.    This Court has general jurisdiction over Defendants because Defendant GT Dave is a resident of California and Defendant GT's Living Foods is headquartered in California.  Further, the Court has general jurisdiction over

Defendants because Defendants conduct substantial business within California such that Defendants have significant, continuous, and pervasive contacts with the State of California.

38.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the challenged mislabeling, misbranding, and marketing practices have been disseminated and committed in this District and because Defendant GT's Living Foods is headquartered in this District.

### FACTS COMMON TO ALL CAUSES OF ACTION

**Defendants' "Non-Alcoholic" Kombucha Beverages Are Greater Than 0.5% Alcohol By Volume**

39.     Defendants' Kombucha Beverages are crafted and bottled in Vernon, California.  Once bottled, Kombucha Beverages are distributed to and sold in individual retail stores throughout the United States, including in States where Plaintiffs live and/or purchased the products.  Defendants also sell their Kombucha Beverages directly to consumers on their Internet website.  Defendants' website also provides a link to several major retailers so that consumers can purchase the Kombucha products online.



40.     Defendants even designed their website to allow consumers to search for stores by zip code or municipality that sell Kombucha Beverages, intending to

have their products sold to consumers throughout the United States, including in States where Plaintiffs live and/or purchased Kombucha Beverages.

41.    Defendants' Kombucha Beverages – comprised of the "G.T.'s Kombucha" and "Synergy" brands - are nearly identical products, with nearly identical advertising, using different names.

42.    The name "kombucha" itself comes from the common name for what is essentially a fermented tea drink.  Kombucha is made of tea that ferments for up to a month while a "blob" of bacteria known as "scoby" (for symbiotic colony of bacteria and yeast) floats on top.  The scoby purportedly "eats the sugar, tannic acids, and caffeine in the tea, and creates a cocktail of live microorganisms."  Basic chemistry explains that the scoby converts the sugar into carbon dioxide and alcohol.  Defendants' "G.T.'s Kombucha" brand is advertised as 98 percent kombucha and 2 percent juice, while the bottles of the "Synergy" brand purportedly consist of 95 percent kombucha and 5 percent juice added for taste.

43.    In 2010, major retailers throughout the country, including Whole Foods, were forced to immediately stop selling GT's kombucha beverages because it was discovered that the beverages contained alcohol levels as high as 2.5 percent by volume, roughly five times the legal limit for non-alcoholic beverages.  In response, Defendants released an "Enlightened" line of the products, named "Enlightened Synergy" and "GT's Enlightened Kombucha," and a "Classic" line of kombucha products.  The Enlightened line was purportedly slightly altered to ensure that the products did not exceed the 0.5 percent alcohol by volume threshold, while the Classic retained the original alcoholic formula.  Around the time of the labeling change, the labels of the "Classic" line stated:

> NOTE TO OUR BELOVED FANS: GT's Kombucha is raw and alive, hand-crafted by nature and made with the best intentions.  We refuse to do anything that could compromise our product's integrity or effectiveness.  That's why

we have chosen to modify our labeling instead of changing the way we make our products.



44.     A display on Defendant GT's Living Foods's website summarized that the "Classic" line retained the "Original" alcoholic formula:

Once An Original…Now A Classic.

We're proud to bring back the formula that started it all.  Must be 21 years or older to purchase.



45.     The website further explained the difference between the "Classic" and "Enlightened" lines as follows:

**What's the difference between GT's Enlightened Kombucha, GT's Classic Kombucha, and GT's Classic Gold Kombucha?**

Did you know that we make two lines of Kombucha?  We do! The main difference is the level of alcohol in each offering and the color of the glass we bottle it in.

*GT's Enlightened Kombucha* is served in clear glass bottles with white caps and available for people of all ages.

*GT's Classic Kombucha* is served in dark amber bottles with black caps and contains over 0.5 – 1 % alcohol-by-volume.  For this reason, GT's Classic Kombucha is only available to those over 21…

*GT's Classic Gold Kombucha* is our take on hard Kombucha. Each offering contains 3 % ABV, making it a better-for-you happy hour alternative for those over 21…[3]

46.    Defendants' transition from a single line of kombucha beverages to two separate lines of kombucha beverages, the "Classic" and "Enlightened" lines, however, is a sham.  In fact, both the Classic and Enlightened versions of the products contain alcohol above the 0.5 percent by volume threshold set by federal and state laws regulating the sale, marketing, labeling, and distribution of alcoholic beverages.

47.    The front of the labels of the Classic line, including Classic Kombucha and Classic Synergy, have, at various time, bore a prominent display stating, in capitalized letters, "CONTAINS ALCOHOL MUST BE 21 OR OLDER TO PURCHASE."  The beverages' caps or lids are wrapped in a removable wrapping stating "over 21."  The Classic line of beverages also include the following federally mandated government warning on their labels:

GOVERNMENT WARNING: (1) ACCORDING TO THE SURGEON GENERAL, WOMEN SHOULD NOT DRINK ALCOHOLIC BEVERAGES DURING PREGNANCY BECAUSE OF THE RISK OF BIRTH DEFECTS.

[3] https://gtslivingfoods.com/faq/raw-kombucha/ (last accessed on November 15, 2019) (bolding and emphasis in original).

(2) CONSUMPTION OF ALCOHOLIC BEVERAGES IMPAIRS YOUR ABILITY TO DRIVE A CAR OR OPERATE MACHINERY, AND MAY CAUSE HEALTH PROBLEMS.

Just below the government warning, the Classic labels have stated: "Kombucha is a cultured tea that is low in alcohol however federal law requires a warning statement on any product that may contain more than 0.5% of alcohol per volume."



48.     Just below the Nutrition Facts section, the Classic labels have stated: "**This product is considered a beer** and contains a natural effervescence.  Please open carefully." (emphasis added).

49.     The labels of the Enlightened line, however, did not contain any of the aforementioned displays, warnings, or markings concerning the alcohol content of the beverages.

50.     Currently, Defendants continue to distinguish the two product lines, the "Classic" and the "Synergy" (formerly, "Enlightened" or "Enlightened Synergy"), as the former being alcoholic and the latter non-alcoholic beverages.  For example, only the Classic line has warning statements like "Must be 21+" and "ABV 0.5%+" on the products' labels.  Additionally, the Frequently Asked Questions section of

Defendants' website provided a description about the alcohol content in the Classic line, but not in the Synergy line, within the class period:

**How Much alcohol is in Kombucha?**

CLASSIC is fully fermented for 45 days, so this line naturally develops 0.5 to 1% ABV (alcohol by volume) and is only available to those over 21.[4]

51.     Unlike the Classic line, Defendants sold, and continue to sell, Kombucha Beverages to persons of any age, including those under the age of 21.

52.     Indeed, Defendants have actively advertised and marketed their Kombucha Beverages as non-alcoholic and promoted consumption even for children and pregnant women.  The Frequently Asked Questions section of Defendants' website has stated within the class period:

**Can children drink SYNERGY Kombucha?**

Our SYNERGY Kombucha can be safe for children and can also be a better-for-you alternative to sugary juices and soda…[5]

**Can I drink SYNERGY Kombucha if I'm pregnant or breastfeeding?**

We have heard from many mothers who continue to drink Kombucha during pregnancy and while breastfeeding…[6]

**Is There Alcohol in Kombucha?**

Alcohol is a natural byproduct of fermentation and can be found in all fermented foods, like miso, kefir, sauerkraut, and kimchi. This alcohol is very beneficial, as it provides a natural form of

---

[4] https://gtslivingfoods.com/pages/does-kombucha-have-alcohol (website version as of July 26, 2022) (underlining added).

[5] https://gtslivingfoods.com/collections/synergy-raw-kombucha#faqs (website version as of July 26, 2022).

[6] *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

food preservation – Nature's self-defense against contamination and bacteria.[7]

53.    Defendants even stated on their website that a "buzzed" feeling some consumers might get from drinking Kombucha Beverages was simply due to "detoxifying effect that can occur from the influx of probiotics."[8]  Indeed, even today, Kombucha Beverages are being marketed on Defendants' website as a "Replacement for alcohol," seeking to attract purchasers that are explicitly trying to avoid alcohol.[9]

54.    As discussed above, however, the "buzzed" feeling people feel from drinking Kombucha Beverages is from the alcohol in the products, not from a purported "detoxifying effect," as Defendants claimed.  Defendants' marketing and advertising strategy is incredibly dangerous as it attempts to convince people that the "buzz" they feel from drinking Defendants' alcoholic beverages is not actually due to alcohol, and, accordingly, that there is nothing to worry about.  Defendant, in effect, actively encourages people to distrust their own feelings of alcohol intoxication and convince them that their feelings of alcohol intoxication are not real.

55.    While pasteurized versions of kombucha products are non-alcoholic, as the pasteurization kills the yeast in the kombucha, the raw (unpasteurized) versions of kombucha become alcoholic over time as the living yeast in the beverage converts sugars into alcohol.  Such natural conversion of sugar to alcohol in unpasteurized kombucha beverages can result in alcohol levels as high as 4 percent alcohol by volume, roughly the same alcohol content as regular beer.

---

[7] https://gtslivingfoods.com/pages/does-kombucha-have-alcohol (website version as of July 26, 2022).
[8] http://web.archive.org/web/20200330165033/https://gtslivingfoods.com/faq/raw-kombucha/ (last accessed on July 26, 2022) ("Sometimes people mistake the feeling they get from drinking Kombucha for a "buzzed" feeling, yet this is not the case with our Enlightened Kombucha.  It's simply the detoxifying effect that can occur from the influx of probiotics…").
[9] https://gtslivingfoods.com/collections/synergy-raw-kombucha (website version as of December 4, 2023)

56.     Because both the "Classic" and "Enlightened" (or "Synergy") versions of Defendants' kombucha beverages are unpasteurized, each set of beverages predictably undergoes a natural fermentation process where the yeast in the beverages converts the sugar in the products into alcohol.  While Defendants claim that they have found a way to brew their Enlightened line of products such that the products never cross the 0.5 percent alcohol threshold post-bottling, many rigorous independent tests uniformly show that each of the beverages in the Enlightened line contains greater than 0.5 percent alcohol by volume and are often as alcoholic as their "alcoholic" "Classic" counterpart.

57.     One of the major reasons that both the Enlightened and Classic lines become alcoholic is because the beverages' labels vastly underreport the amount of sugar in the products.  As discussed above, the yeast in these raw kombucha beverages converts the high sugar content into alcohol.  Aside from causing the Kombucha Beverages to become alcoholic, the misrepresented sugar content of Kombucha Beverages causes the beverages to be less healthy than advertised.[10]  The misrepresented amount of sugar in Kombucha Beverages, by omitting to disclose the full amount, is misleading to consumers and misled the Plaintiffs, and causes the products to be misbranded and mislabeled.

**Defendants' History Of Fraudulently Manufacturing Kombucha Beverages With Alcohol Levels Above The 0.5 Percent ABV Threshold**

58.     Defendants' fraudulent marketing and labeling of their Kombucha Beverages as non-alcoholic, when in fact they contain substantial amounts of alcohol, stretches back at least several years before the 2010 recall, and likely to the formation of the company in 1995.

---

[10] *See, e.g.*, KRISTIN KIRKPATRICK, M.S., R.D., L.D., 10 THINGS YOU DON'T KNOW ABOUT SUGAR (The Huffington Post, 2013) (summarizing that high sugar diets can be the source of obesity, heart failure, and cancer).

59.     For example, on September 1, 2006, Defendant GT's Living Foods (through a related entity) reached a settlement with the Bureau of Alcohol, Tobacco and Firearms (currently operating as the Alcohol and Tobacco Tax and Trade Bureau or "TTB") for selling kombucha beverages "that contained over 0.5% alcohol without having a basic permit, a violation of 27 U.S.C. § 203(b)(1)&(2) and 27 C.F.R. § 24.106" and for selling such beverages "without the proper labels [or] labels approvals," and for distributing the products "without the government warning statement, a violation of 27 U.S.C. § 215(a) and 27 C.F.R. § 16.21."

60.     In 2010, an inspector from the Maine Department of Agriculture noticed that some bottles of kombucha were leaking and bubbling in one of Whole Foods' Portland stores, sparking Federal Drug Administration ("FDA") and TTB investigations concerning the alcohol content of various kombucha products, including GT's Kombucha.  After it was discovered that many kombucha products had alcohol levels as high as 2.5 percent by volume, Whole Foods pulled kombucha products, including GT's Kombucha products, off the shelves.

61.     Several other manufacturers of kombucha beverages, such as Honest Tea, owned and operated by the Coca-Cola Company, were unable to reformulate their kombucha beverages to ensure that the products never crossed the 0.5 alcohol by volume threshold at retail or consumption.  "Despite reformulating its kombucha drinks in August 2010, Honest Tea found that the level of alcohol in Honest Kombucha – when left at room temperature – increased beyond 0.5 percent.  Citing the difficulty in maintaining legal alcohol levels, Honest Tea discontinued the line in December 2010."[11]

---

[11] Ray Latif, *Kombucha Class Action Suits Settled with GT's, Honest Tea*, BevNet.com, Nov. 8, 2011.  Available at http://www.bevnet.com/news/2011/kombucha-class-action-suits-settled-with-gts-honest-tea (last accessed July 26, 2022).

62.     Defendant GT Dave, however, "was unwilling to radically change his process."  While "[s]ome brewers use pasteurization to help control the alcohol content in their products, or ferment for shorter periods and add forced carbonation," Defendant GT Dave claimed that he "changed the potential for alcohol by controlling the chemistry of the fermentation" for Defendants' Enlightened line of kombucha beverages.[12]  As described above, the Enlightened or the Synergy line is a "raw" and "unpasteurized" kombucha, necessarily meaning that the beverages continue to ferment and increase in alcohol over time, especially if left unrefrigerated for even short periods of time.  Whatever changes Defendants made to their Kombucha Beverages=, if any, are ineffective at curbing the accumulation of alcohol in the products past 0.5 percent alcohol by volume through the normal and expected use of the products.

**Testing from TTB Accredited Laboratories Shows that Enlightened Kombucha has Greater than 0.5 Percent Alcohol by Volume**

63.     Brewing & Distilling Analytical Services, LLC ("BDAS"), an Alcohol and Tobacco Tax and Trade Bureau certified laboratory, conducted tests on multiple batches of Enlightened Kombucha.  BDAS utilized scientifically valid, TTB approved methodology for testing kombucha beverages.  Each test showed that every bottle of the products tested contained a level of alcohol by volume greater than 0.5 percent.  Specifically, in February 2018, BDAS tested the alcohol by volume content of the following flavors of Defendants' Enlightened Kombucha: Multi-Green, Strawberry Serenity, and Original.  The alcohol by volume content of these samples ranged between 0.59 -1.40 percent alcohol by volume.  Then, in September 2019, BDAS tested the alcohol by volume content of the following flavors of Defendants' Enlightened Kombucha: Gingerberry, Strawberry Serenity, Watermelon Wonder, Passionberry Bliss, Guava Goddess, Pink Lady Basil, Trilogy, Lavender Love, Heart

---

[12] Tom Foster, *Meet the King of Kombucha*, Inc., March 2015.  Available at http://www.inc.com/magazine/201503/tom-foster/the-king-of-kombucha.html (last accessed July 26, 2022).

Beet, Tantric Tumeric, Gingerade, Original, Hibiscus Ginger, Cayennade, Lemonade, Multi-Green, Raspberry Chia, Cosmic Cranberry, and Mystic Mango. The alcohol by volume content of these samples ranged between 0.71 and 2.21 percent.  At the time of the testing, none of the products had passed their stated expiration date.  Not a single product tested was below the federally mandated 0.5 percent alcohol by volume limit.

64.   In September 2019, BDAS also tested all of the same samples of Enlightened Kombucha (as discussed above) to determine the beverages' sugar content.  BDAS's test results showed that Enlightened Kombucha beverages contain more than 15 percent more sugar than declared on the beverages' labels.

65.   Multiple other independent laboratories have tested Defendants' Enlightened Kombucha products and have seen nearly identical results.  For instance, in February 2019, Blake Ebersole, one of the foremost experts in kombucha alcohol testing in the United States, tested 29 samples of Defendants' Enlightened Kombucha products using AOAC Official Method of Analysis AOAC 2016.12, a gas chromatography with flame ionization detection (GC-FID) with headspace auto-sampling methodology, run by Covance-Eurofins Laboratory.  Mr. Ebersole found that "[a]ll 29 [Enlightened Kombucha] samples tested contained greater than 0.5 percent alcohol by volume (% ABV), with results ranging from 0.64 – 1.85% ABV. This is between 28% and 370% higher than the legal limit of 0.5% ABV."

66.   Mr. Ebersole also "conducted testing in December 2015 and July 2016 using the same analytical method (AOAC 2016.12) at Covance on 21 [Enlightened Kombucha] samples.  All 21 [Enlightened Kombucha] samples contained greater than 0.5% ABV, ranging from 1.09 – 1.96% ABV.  This is between 218 and 392% higher than the legal limit of 0.5% ABV."

67.   Mr. Ebersole also "conducted testing in March 2016 within a method verification and round-robin study that yielded four candidate methods from three

laboratories (including the headspace GC-FID method).  [Mr. Ebersole] found consistency in results among the laboratories on four [Enlightened Kombucha] samples that all contained greater than 0.5% ABV.  In this round of testing, alcohol in [Enlightened Kombucha] ranged from 1.27-1.51% ABV.  This is between 254 and 302% higher than the legal limit of 0.5% ABV."

68.     For all of Mr. Ebersole's testing, the samples were purchased directly from retailers' refrigerated shelves, from non-alcoholic beverage refrigerated sections of the stores that were separate from the alcoholic beverage sections.  The samples were not expired.  Samples were transported in refrigerated conditions, ensuring that the samples were kept cold at all times.

69.     Mr. Ebersole also reported that Enartis Vinquiry conducted testing of 46 bottles of Enlightened Kombucha in 2017 and 2018 using GC-FID.  "The samples contained an average of 1.16% ABV, ranging from 0.60 to 2.05%."

70.     Mr. Ebersole also reported that these results "for alcohol in [Enlightened Kombucha] are consistent with results independently reported by others in the published literature:"

> For example, in 2015 John Edwards, Ph.D. from Process NMR Associates analyzed three samples of [Enlightened Kombucha] in 2015 using a nuclear magnetic resonance method.  He found all three samples had alcohol levels higher than 0.5% ABV, ranging from 1.23-1.40 % ABV, reflecting alcohol levels 246%-280% higher than the 0.5% limit.  In 2017, Daniel Armstrong, Ph.D. and colleagues at the University of Texas analyzed eight samples of [Enlightened Kombucha] using headspace GC-FID, and found they all exceeded 0.5% alcohol, reporting a range of 1.1%-1.8% ABV in the drinks.  This reflects an amount that is 220%-360% higher than the 0.5% ABV limit for non-alcoholic beverages.

71.     Notably, between mid-2017 through the present, Defendants did not change the formulation of Kombucha Beverages or its brewing process, and made no other changes that materially affect the level of alcohol in the beverages, meaning

that all Kombucha Beverages remain above the 0.5% alcohol by volume threshold to this day.  For instance, in a June 2022 bench trial in *Tortilla Factory, LLC v. GT's Living Foods, LLC*, Case No. 2:17-cv-07539-FMO-GJS, ECF No. 379 (C.D. Cal. Sep. 7, 2023) concerning in part the level of alcohol of Kombucha Beverages, the Court found that the plaintiffs' evidence concerning elevated alcohol content, relying on the same testing by Mr. Ebersole cited above, "is credible and compelling."  And, as discussed above, several Plaintiffs experienced the intoxicating effects of alcohol in the Kombucha Beverages well after the date of the aforementioned tests were conducted, showing that the beverages remain highly alcoholic.

72.     Despite these numerous reports from independent research and various forms of media coverage, Defendants still fail to disclose to consumers that their fermentation process causes Kombucha Beverages to exceed 0.5% ABV by the time the products reaches consumers, misleading them that Kombucha Beverages are non-alcoholic when in fact they are not.

**Every Bottle of Kombucha Beverages Violates A Host of Federal and State Laws Regulating The Labeling Of Alcoholic Beverages**

73.     Prior to a recent update, the Alcohol and Tobacco Tax and Trade Bureau's website stated that "TTB's initial testing of kombucha in the marketplace reveals that many of these products contain at least 0.5 percent alcohol by volume. These products are alcohol beverages and are consequently subject to regulation."[13] The TTB stated that its "primary concern is to ensure that consumers are not misled about the nature of alcohol beverage products that might be marketed as non-alcoholic beverages.  It is important that consumers are adequately informed about the nature of these products."

74.     Under federal law, Defendant cannot turn a blind eye to what happens to Kombucha Beverages products after they leave Defendants' facilities.  The TTB's

---

[13] https://web.archive.org/web/20150818084444/http://www.ttb.gov/faqs/kombucha-faqs.shtml (last accessed July 26, 2022).

current website shows that the concern over alcohol in kombucha beverages persists. "Some kombucha products contain 0.5% or more alcohol by volume. These products are alcohol beverages ... It is important to note that regardless of the alcohol content of the finished beverage, when kombucha reaches 0.5% alcohol or more by volume at any time during the production process, it must be produced on a TTB-qualified premises and is subject to TTB regulation. Thus, for example, a producer of a kombucha-style beer that reaches an alcohol content of 1.2% alcohol by volume during production must qualify as a brewer and comply with TTB regulations in 27 C.F.R. § part 25, even if the finished product is a non-alcoholic beverage (containing less than 0.5% alcohol by volume)."[14]

75.    According to the TTB, "[e]ven though a kombucha beverage may have less than 0.5% alcohol by volume at the time of bottling, fermentation may continue in the bottle after it leaves the production facility, depending on how the kombucha beverage is made and stored. As a result, the alcohol content may increase to 0.5% or more alcohol by volume. Such a product is an alcohol beverage, which is subject to the laws and regulations governing the production, taxation, labeling, marketing, and distribution of alcohol beverages."[15]

76.    The TTB makes clear that distributors and manufacturers (such as Defendant) cannot escape liability for failing to include the required alcohol warning statement even if the beverages become alcoholic *after* they are sold downstream to retailers or consumers that fail to refrigerate the beverages. "Refrigeration of the product is not an adequate method of ensuring that the alcohol content will not increase while in the original container after removal because, among other things, you cannot control whether the product will be refrigerated after removal."[16]

---

[14] https://www.ttb.gov/kombucha/kombucha-general#testing
[15] *Id.*
[16] *Id.*

77.     In the Frequently Asked Questions portions of its website, the TTB explains in a series of questions and answers the various labeling requirements kombucha beverages must meet if they have more than 0.5 percent alcohol by volume.  One of the questions is "Are kombucha containers required to bear a health warning statement?"  The TTB answers, "Yes, if the kombucha beverage contains 0.5 percent or more alcohol by volume.  The container of any alcohol beverage sold or distributed in the United States with an alcohol content of 0.5 percent or more must bear the health warning statement required by the Alcoholic Beverage Labeling Act of 1988," citing 27 C.F.R. § 16.  In turn, 27 C.F.R. § 16.10 defines "Alcoholic beverage" as "any beverage in liquid form which contains not less than one-half of one percent (.5%) of alcohol by volume and is intended for human consumption." 27 C.F.R. § 16.20 goes on to state that "no person shall bottle for sale or distribution in the United States any alcoholic beverage unless the container of such beverage bears the health warning statement required by § 16.21."

78.     27 C.F.R. § 16.21 states that "[t]here shall be stated on the brand label or separate front label, or on a back or side label, separate and apart from all other information, the following statement: GOVERNMENT WARNING: (1) According to the Surgeon General, women should not drink alcoholic beverages during pregnancy because of the risk of birth defects. (2) Consumption of alcoholic beverages impairs your ability to drive a car or operate machinery, and may cause health problems."  The labels of Kombucha Beverages do not bear this warning.

79.     The TTB's website has also stated that certain "beers," including kombucha products, "that [are] made without both malted barley and hops .... must ... comply with FDA labeling requirements.  Such products are still subject to the marking requirements of the IRC and the health warning statement requirements of

ABLA."[17]  The FDA clarifies that such alcoholic beverages are subject to the nutrition labeling requirements set out at 21 C.F.R. § 101.9, and the general requirements of 21 C.F.R. § 101.3 and 21 C.F.R. § 101.4.[18]  Because Kombucha Beverages are "made without both malted barley and hops," the Beverages are also subject to the general nutrition labeling requirements set out by the FDA.

80.     Accordingly, the labels of Kombucha Beverages are subject to the "false and misleading" standard of and the corresponding state law counterparts that track the federal standards.  *See, e.g.*, N.J. Admin. Code § 13:2-27.1(a) ("The following Federal regulations relating to labeling and standards of fill … shall also apply to alcoholic beverages packaged purely for intrastate shipment within New Jersey"); 204 Mass. Reg. 2.06(1) ("Every manufacturer … shall place on the brand labels all information required by federal regulations"); Fla. Stat. Ann. § 565.08 (same).  Because Kombucha Beverages contain alcohol above 0.5 percent by volume, they are misbranded under the FDA's labeling requirements, and the corresponding state law counterparts that track the federal standards.

81.     Defendants' sale and marketing of Kombucha Beverages as non-alcoholic also violates a host of state laws prohibiting the sale of alcohol to minors.  For example, it is unlawful in the State of Arizona "to sell, furnish, dispose of or give, or cause to be sold, furnished, disposed of or given, to a person under the legal drinking age or for a person under the legal drinking age to buy, receive, have in the person's possession or consume spirituous liquor."  Ariz. Rev. Stat. Ann. § 4-244(9).  *See also* 235 Ill. Comp. Stat. Ann. 5/6-16 (Illinois law prohibiting the sale of alcohol products to persons under 21); Del. Code Ann. tit. 4, § 904 (Delaware law

---

[17]https://web.archive.org/web/20180726103232/https://www.ttb.gov/kombucha/kombucha-general.shtml
[18] U.S. Food and Drug Administration, *Guidance for Industry: Labeling of Certain Beers Subject to the Labeling Jurisdiction of the Food and Drug Administration*, December 2014.  Available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-labeling-certain-beers-subject-labeling-jurisdiction-food-and-drug-administration (last accessed July 26, 2022).

prohibiting underage possession of alcohol); *State v. McCathern*, 211 Or. App. 171, 154 P.3d 130 (2007) (affirming that under Oregon law, Or. Rev. Stat. Ann. § 471.410, it is a strict liability offense to "sell, give or otherwise make available any alcoholic liquor to a person under the age of 21 years.").  Defendants' failure to comply with the federal Food, Drug, and Cosmetic Act ("FDCA") concerning the alcohol content of Kombucha Beverages and violation of various state laws prohibiting the sale of alcohol to minors offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).

82.    In defiance of federal and state laws and regulations, Defendants ignore those labeling requirements for alcoholic beverages.  Considering that Defendant GT's Living Foods has repeatedly been caught selling kombucha beverages that contained elevated amounts of alcohol, Plaintiffs allege on information and belief that Defendants knowingly and willfully distribute Kombucha Beverages in violation of federal and state laws and regulations that require such beverages to contain the government warning, as set out above.

83.    Because each illegal sale of alcoholic beverages to persons under the age of 21 is a criminal offense, punishable by fines and/or time in jail, it amounts to an unlawful, unfair, and unconscionable business practice under various States' consumer protection laws and "racketeering activity" under RICO.

84.    Defendants made, and continue to make, unlawful and misleading claims on the labels of Kombucha Beverages that are prohibited by identical federal and state laws, and which render these products misbranded.  Defendants' sale and marketing of Kombucha Beverages as non-alcoholic, low sugar beverages, by omitting to disclose their true content, is highly misleading to a reasonable consumer, including Plaintiffs.  Because Kombucha Beverages do not include the required warnings concerning the significant presence of alcohol, consumers,

including Plaintiffs, are led to believe that those products are safe to consume when driving a car, operating machinery, and taking with potentially a deadly cocktail of incompatible medications.

85.    Defendants' unwillingness to treat the 0.5% ABV threshold seriously can be seen through Defendant GT Dave's statements in 2010 concerning being forced to release the Enlightened line due to the recall.  Defendant GT Dave stated in an interview:

> The whole .5% alcohol threshold is so arbitrary.  It's acting like .4% is not going to do anything but .6% is gonna get you wasted.  It's not.  A lot of these laws and regulations were created in the 1920's.  You can get more alcohol in your system from mouthwash, cough syrup, vanilla extract, cooking wine, an herbal tincture or a dozen other products…It's a little distorted.[19]

In another interview given around the same time, Defendant GT Dave stated:

> Most of these laws [regarding alcohol content of store-sold beverages] were written around the prohibition period, and the .5 percent threshold is very arbitrary – **there is really no difference with a product that is slightly below or above**…Our long-term goal is to change legislation, a mission that will take some time.  **We are being asked to control something that is out of our control**…That's why it was a confusing time.[20]

(emphasis added).

86.    Rather than attempting to implement a brewing process that would bring Defendant GT's Living Foods' operations into compliance with applicable federal and state laws and regulations, Defendant GT Dave even goes further and actively

---

[19] Kombuchakamp.com, *GT Dave – Exclusive Interview*, 2010.  Available at https://www.kombuchakamp.com/update-gts-original-enlightened-kombucha-on-the-way-will-stay-raw-and-true-to-ourselves
[20] Kelly Green, *What Happened to GT Dave's Kombucha?*, Phoenix New Times, Oct. 21, 2010.  Available at http://www.phoenixnewtimes.com/restaurants/what-happened-to-gt-daves-kombucha-6533129

lobbies Congress to increase the threshold for regulation from 0.5% ABV to 1.25% ABV.[21]

87.     But whatever long-term goals Defendants may have about changing legislation are irrelevant to the fact that the 0.5 % ABV threshold is the law of the land.  There is a very big difference between a beverage under and over this limit, as underscored throughout federal and state law in this field going back to the 1930's, the fall of prohibition, and before.  One is lawful and the other is not.  Further, as discussed above, the Enlightened line is not "slightly" above the legal limit.  In fact, many, if not most, of the beverages in the Enlightened line are at least double the legal limit, with some reaching over four times the legal limit.  If the natural fermentation of the Enlightened (or Synergy) line, such that the beverages become more alcoholic than permitted by law, is "something that is out of [Defendant's] control," Defendant cannot and should not sell the products.

88.     Defendants' marketing of the Enlightened (or Synergy) line as the non-alcoholic version of their Classic line is highly misleading to a reasonable consumer.  Because the Enlightened or Synergy products omit the appropriate warnings and are sold to consumers of all ages, consumers, including Plaintiffs, are led to believe that the products are safe to consume when driving a car or operating machinery and pose no safety concerns.  Like any other forms of alcohol, Kombucha Beverages may in fact cause health problems, are not safe to consume while driving or operating machinery, and may increase the chance of birth defects if consumed during pregnancy.  For these reasons, Kombucha Beverages must bear the government warning mandated by 27 C.F.R. § 16.21.  To the extent that they have not, Kombucha Beverages are misbranded under applicable state and federal laws and

---

[21] *See* Kombucha Brewers International's YouTube Channel, https://www.youtube.com/watch?v=-z4CD2gEr_ ("Join GT Dave in supporting the KOMBUCHA Act.").

regulations.  Without the government warning, Kombucha Beverages cannot legally be manufactured, distributed, held, or sold under federal and state law.

89.     Plaintiffs provided notice to Defendants of the violations discussed in this Complaint by letter dated April 12, 2022, served via certified mail on April 18, 2022.  A copy of the notice letter is attached hereto as Exhibit 1.  Counsel for Defendants has acknowledged receipt.  Plaintiffs also provided notice to Defendants by a service of emails to Defendants' attorney, who agreed to accept service on behalf of Defendants, between December 4-9, 2023, which included providing Defendants with a copy of a PDF of a virtually identical version of this Complaint.

## CLASS REPRESENTATION ALLEGATIONS

90.     Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a class consisting of all persons in the United States who, between February 28, 2017 and the date that class notice is disseminated, purchased Defendants' Kombucha Beverages (the "Class").

91.     Plaintiffs Mukadam and Overton also seek to represent a subclass defined as all members of the Class who purchased Kombucha Beverages in Florida (the "Florida Subclass").

92.     Plaintiff Wollerman also seeks to represent a subclass defined as all members of the Class who purchased Kombucha Beverages in Massachusetts (the "Massachusetts Subclass").

93.     Plaintiff Jones also seeks to represent a subclass defined as all members of the Class who purchased Kombucha Beverages in Virginia (the "Virginia Subclass").

94.     Plaintiff Holt also seeks to represent a subclass defined as all members of the Class who purchased Kombucha Beverages in Illinois (the "Illinois Subclass").

95.   Plaintiff Nibbelink also seeks to represent a subclass defined as all members of the Class who purchased Kombucha Beverages in Michigan (the "Michigan Subclass").

96.   Plaintiff Kresl also seeks to represent a subclass defined as all members of the Class who purchased Kombucha Beverages in Oregon (the "Oregon Subclass").

97.   Plaintiff Roberson also seeks to represent a subclass defined as all members of the Class who purchased Kombucha Beverages in Ohio (the "Ohio Subclass").

98.   Plaintiff Roberson also seeks to represent a subclass defined as all members of the Class who purchased Kombucha Beverages in Pennsylvania (the "Pennsylvania Subclass").

99.   Plaintiffs Nibbelink and Kresl also seek to represent a subclass defined as all members of the Class who purchased Kombucha Beverages and were under the age of 21 at the time of purchase (the "Under 21 Subclass").  Both are members of the Under 21 Subclass, as they were under the age of 21 at the time of purchase.

100.   Plaintiffs reserve the right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

101.   Excluded from the Class are the Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.

102.   Also excluded from the Class are persons or entities that purchased Kombucha Beverages for purposes of resale.

103.   Plaintiffs are members of the Class they seek to represent.

104.   Defendants sell hundreds of thousands, if not millions, of bottles of Kombucha Beverages.  Kombucha Beverages are available in major supermarkets nationwide, including in California and various other states.  Accordingly, members of the Class are so numerous that their individual joinder herein is impracticable. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants, third party retailers, and vendors.

105.   Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Kombucha Beverages are misbranded, and whether the labeling, marketing and promotion of Kombucha Beverages is false and misleading.

106.   The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs were exposed to and relied on Defendants' false, misleading, and misbranded labels (and were influenced by the material omissions on the labels), purchased Kombucha Beverages, and suffered losses as a result of those purchases.

107.   Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

108.   The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish

Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
## Violation Of Racketeer Influenced And Corrupt Organization Act ("RICO"), Title 18, U.S.C. Chapter 96, §§ 1961-1968

109.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

110.   Plaintiffs bring this claim individually and on behalf of members of the proposed Class and Subclasses against Defendant GT Dave.

111.   Defendant GT Dave was and is a "person" as defined in 18 U.S.C. § 1961(3).

112.   Defendant GT's Living Foods is an "enterprise" as that term is defined in 18 U.S.C. § 1961(4).

113.   At all times relevant to this class action, Defendant GT Dave violated 18 U.S.C. § 1962(c) by being a person who was "employed by or associated with" GT's Living Foods, an enterprise, "conduct[ed] or participate[d], directly or indirectly, in the conduct of [that] enterprise's affairs through a pattern of racketeering activity."  *See* 18 U.S.C. § 1962(c).

114.   At all times relevant to this class action, Defendant GT Dave and/or persons acting on his behalf or at his best, engaged in a pattern of racketeering

activity, as defined in 18 U.S.C. § 1961(5) by committing the following racketeering activities, as listed in 18 U.S.C. § 1961(1):

    a. Mail Fraud, in violation of 18 U.S.C. § 1341: As alleged in this Complaint, Defendants and/or persons acting on their behalf, used the mails to disseminate advertising and marketing materials for Kombucha Beverages.

    b. Violations of the Travel Act, 18 U.S.C. § 1952(a) & (b): by repeatedly using the mails or any facility in interstate commerce, with intent to distribute the proceeds of any unlawful activity (of unlawful liquor distribution) or otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any unlawful activity.

115.    Plaintiffs and the members of the Class and Subclasses have been injured as a result of Defendant GT Dave's violations of 18 U.S.C. § 1962(c) because they paid a price premium for Kombucha Beverages, and purchased Kombucha Beverages when they otherwise would not have had they known that the products were illegal for them to purchase (to the extent they were under 21) and that the products were alcoholic beverages.  As such, Plaintiffs are entitled to bring this proposed class action under 18 U.S.C. § 1964(c) and to recover the damages and other remedies enumerated therein.

## COUNT II
## Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, *et seq*.

116.    Plaintiffs Mukadam and Overton hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

117.    Plaintiffs Mukadam and Overton bring this claim individually and on behalf of the members of the proposed Florida Subclass against both Defendants.

118.   Plaintiffs Mukadam and Overton and Florida Subclass members are consumers who purchased Kombucha Beverages for personal, family or household purposes.  Plaintiffs Mukadam and Overton and the Florida Subclass are "consumers" as that term is defined by the FDUTPA in Fla. Stat. § 501.203(7).

119.   The Kombucha Beverages that Plaintiffs Mukadam and Overton and Florida Subclass members purchased from Defendants were goods within the meaning of Fla. Stat. § 501.203(8).

120.   Defendants' marketing and labeling of Kombucha Beverages as non-alcoholic and distributing and selling the products with the omission or absence of the government mandated warning for alcoholic beverages are "trade or commerce" as the term is defined by the FDUTPA in Fla. Stat. § 501.203(8).

121.   Defendants' actions, representations, and conduct have violated, and continue to violate the FDUTPA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

122.   Plaintiffs Mukadam and Overton and Florida Subclass members acted reasonably when they purchased Kombucha Beverages based on their belief that Defendants' representations were not misleading, true, and lawful.

123.   Defendants' marketing and labeling of Kombucha Beverages as non-alcoholic, and the absence of the government mandated warning for alcoholic beverages, makes such advertising false and deceptive to a reasonable consumer, including Plaintiffs.  That is because Kombucha Beverages in fact contain above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law.  Further, the lack of appropriate warning on the labels of Kombucha Beverages, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy.  The lack of appropriate

warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction.  Without the appropriate warning and notice that the beverage is alcoholic, Kombucha Beverages are an unreasonably dangerous product that is unfit for sale.  Defendants' failure to comply with FDCA and deceptive advertising concerning the alcohol content of Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).  Accordingly, Defendants' marketing and labeling practices are "unfair methods of competition," "unconscionable," and "unfair and deceptive … in the conduct of any trade or commerce" in violation of the FDUTPA in Fla. Stat. § 501.204.

124.   Further, Defendants' omissions on the beverages' labels that Enlightened Kombucha contains at least 15 percent more sugar than listed on the products' labels makes such advertising false and misleading to a reasonable consumer, including Plaintiffs.  The excess amount of sugar in the beverages also makes Kombucha Beverages less healthy than advertised.  Defendants' failure to comply with FDCA and deceptive advertising concerning the sugar content of Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).  Accordingly, Defendants' marketing and labeling practices are "unconscionable … and unfair and deceptive … in the conduct of any trade or commerce" in violation of the FDUTPA in Fla. Stat. § 501.204.

125.   Plaintiffs Mukadam and Overton and the Florida Subclass members suffered a loss as a result of Defendants' deceptive and unfair trade acts and practices.  Specifically, Plaintiffs Mukadam and Overton and the Florida Subclass members suffered monetary losses associated with the purchase of Kombucha Beverages because (a) they would not have purchased Kombucha Beverages absent

Defendants' omission of a government warning concerning the products' alcohol content; (b) they would not have purchased Kombucha Beverages on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Kombucha Beverages due to Defendants' misrepresentations and omissions; and (d) Kombucha Beverages did not have the characteristics, benefits, or quantities as promised.

## COUNT III
### Violation of Massachusetts' Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A, § 2(a)

126.   Plaintiff Wollerman hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

127.   Plaintiff Wollerman also brings this claim individually and on behalf of members of the proposed Massachusetts Subclass against both Defendants.

128.   The Kombucha Beverages that Plaintiff Wollerman and Massachusetts Subclass members purchased from Defendants were "commodities" within the meaning of Mass. Gen. Laws Ch. 93A, § 1.

129.   Defendants' marketing and labeling of Kombucha Beverages as non-alcoholic and distributing and selling the products with the omission or absence of the government mandated warning for alcoholic beverages are "trade" and "commerce" as the terms are defined in Mass. Gen. Laws Ch. 93A, § 1.

130.   Defendants' marketing and labeling of Kombucha Beverages as non-alcoholic, and the absence of the government mandated warning for alcoholic beverages, makes such advertising false and deceptive to a reasonable consumer, including Plaintiff.  That is because Kombucha Beverages in fact contain above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law.  Further, the lack of appropriate warning on the labels of Kombucha Beverages is a serious health hazard to consumers because uninformed consumers purchase the products before driving a

vehicle, operating machinery, and during pregnancy.  The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction.  Without the appropriate warning and notice that the beverage is alcoholic, Kombucha Beverages are an unreasonably dangerous product that is unfit for sale.  Defendants' failure to comply with FDCA and deceptive advertising concerning the alcohol content of Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).  Accordingly, Defendants' marketing and labeling practices are "unfair methods of competition and unfair or deceptive … in the conduct of any trade or commerce," violating Mass. Gen. Laws Ch. 93A, § 2(a).

131.   Further, Defendants' omissions on the beverages' labels that Enlightened Kombucha contains at least 15 percent more sugar than listed on the products' labels makes such advertising false and misleading to a reasonable consumer, including Plaintiff.  The excess amount of sugar in the beverages also makes Kombucha Beverages less healthy than advertised.  Defendants' failure to comply with FDCA and deceptive advertising concerning the sugar content of Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).  As such, Defendants' marketing and labeling practices are "unfair methods of competition and unfair or deceptive … in the conduct of any trade or commerce," violating Mass. Gen. Laws Ch. 93A, § 2(a).

132.   Plaintiff Wollerman and Massachusetts Subclass members suffered a loss as a result of Defendants' deceptive and unfair acts and practices.  Specifically, Plaintiff Wollerman and Massachusetts Subclass members suffered monetary losses associated with the purchase of Kombucha Beverages because (a) they would not have purchased Kombucha Beverages absent Defendants' omission of a government

warning concerning the products' alcohol content; (b) they would not have purchased Kombucha Beverages on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Kombucha Beverages due to Defendants' misrepresentations and omissions; and (d) Kombucha Beverages did not have the characteristics, benefits, or quantities as promised.

## COUNT IV
### Violation of the Virginia Consumer Protection Act (VCPA), Va. Code §§ 59.1-198, 59.1-200, and 59.1-204.

133.   Plaintiff Jones hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

134.   Plaintiff Jones brings this claim individually and on behalf of members of the proposed Virginia Subclass against both Defendants.

135.   Defendants are "supplier[s]" as defined in Va. Code § 59.1-198.

136.   Plaintiff Jones and the Virginia Subclass members purchased Kombucha Beverages for personal, family, or household purposes.  They are "consumers" for purposes of the VCPA.

137.   The Kombucha Beverages that Plaintiff Jones and the Virginia Subclass members purchased from Defendants were "goods" as defined in Va. Code § 59.1-198.

138.   Plaintiff Jones as well as the Virginia Subclass members, and Defendants entered into "consumer transactions" as defined in Va. Code § 59.1-198 when Plaintiffs and the Virginia Subclass members purchased Kombucha Beverages.

139.   The VCPA prohibits "a supplier in connection with a consumer transaction" from misrepresenting "goods or services as those of another," or "goods or services have certain quantities, characteristics, ingredients, uses, or benefits." *See* Va. Code § 59.1-200(A).  The Act establishes a cause of action for any individual "who suffers loss," *id.* § 59.1-204(A), as a result of a "fraudulent act[ ] or

practice" by a supplier in connection with a consumer transaction." *Id.* § 59.1-200(A).

140.   In enacting the Act, the Virginia General Assembly intended that it "be applied as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." *See* Va. Code § 59.1-197; *Concordia Pharms., Inc. v. Method Pharms.*, LLC, 2016 WL 1271082, at *14 (W.D. Va. Mar. 29, 2016).

141.   Defendants' marketing and labeling of Kombucha Beverages as non-alcoholic, and the absence of the government mandated warning for alcoholic beverages, makes such advertising false and deceptive to a reasonable consumer, including Plaintiff Jones.  That is because Kombucha Beverages in fact contain above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law.  Further, the lack of appropriate warning on the labels of Kombucha Beverages, is a serious health hazard to consumers because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy.  The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction.  Without the appropriate warning and notice that the beverage is alcoholic, Kombucha Beverages are an unreasonably dangerous product that is unfit for sale.  Defendants' failure to comply with FDCA and deceptive advertising concerning the alcohol content of Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).

142.   Further, Defendants' omissions on the beverages' labels that Enlightened Kombucha contains at least 15 percent more sugar than listed on the products' labels makes such advertising false and misleading to a reasonable

consumer, including Plaintiff Jones.  The excess amount of sugar in the beverages also makes Kombucha Beverages less healthy than advertised.  Defendants' failure to comply with FDCA and deceptive advertising concerning the sugar content of Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).  As such, Defendants' marketing, advertising, and labeling practices are "unlawful," violating the VCPA.

143.   Plaintiff and members of the Virginia Subclass acted reasonably when they purchased Kombucha Beverages based on their belief that Defendants' representations were accurate, true, and lawful.

144.   Plaintiff and the Subclass suffered injuries caused by Defendants because (a) they would not have purchased Kombucha Beverages absent Defendants' omission of a government warning concerning the products' alcohol content; (b) they would not have purchased the products on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Kombucha Beverages due to Defendants' misrepresentations and omissions; and (d) Kombucha Beverages did not have the characteristics, benefits, or quantities as promised.

**COUNT V**
**Violation of the Illinois Consumer Fraud Act (ICFA),**
**815 ILCS 505/1 <em>et seq.</em>**

145.   Plaintiff Holt hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

146.   Plaintiff Holt also brings this claim individually and on behalf of members of the proposed Illinois Subclass against both Defendants.

147.   Defendants are "person[s]" as that term is defined in 815 ILCS 505/1(a).

148.   Plaintiff Holt and the Illinois Subclass members purchased Kombucha Beverages for personal, or household purposes.  They are "consumer[s]" as defined in 815 ILCS 505/1(a).

149.   The Kombucha Beverages that Plaintiff Holt and the Illinois Subclass members purchased from Defendants were "merchandise" as that term is defined in 815 ILCS 505/1(b).

150.   Defendants' marketing, labeling, distributing, and selling Kombucha Beverages are "trade" and "commerce" as the term is defined by the ICFA in 815 ILCS 505/1(f).

151.   The ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of any trade or commerce are hereby declared unlawful …."  815 ILCS 505/2.

152.   Defendants' marketing and labeling of Kombucha Beverages as non-alcoholic, and the absence of the government mandated warning for alcoholic beverages, makes such advertising false and deceptive to a reasonable consumer, including Plaintiffs.  That is because Kombucha Beverages in fact contain above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law.  Further, the lack of appropriate warning on the labels of Kombucha Beverages, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy.  The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction.  Without the

appropriate warning and notice that the beverage is alcoholic, Kombucha Beverages are an unreasonably dangerous product that is unfit for sale.  Defendants' failure to comply with FDCA and deceptive advertising concerning the alcohol content of Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).

153.   Further, Defendants' omissions on the beverages' labels that Enlightened Kombucha contains at least 15 percent more sugar than listed on the products' labels makes such advertising false and misleading to a reasonable consumer, including Plaintiffs.  The excess amount of sugar in the beverages also makes Kombucha Beverages less healthy than advertised.  Defendants' failure to comply with FDCA and deceptive advertising concerning the sugar content of Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).

154.   Defendants' advertising, marketing, and labeling practices violated the ICFA in 815 ILCS 505/2 by misleading Plaintiff Holt and the Illinois Subclass members to believe that Kombucha Beverages are non-alcoholic when in fact the products contain a substantial amount of alcohol, and by omitting the true amount of sugar in the beverages.

155.   Defendants knew or should have known, through the exercise of reasonable care that Kombucha Beverages were and continue to be misbranded, and that their omissions about the sugar and alcohol content of the beverages were unauthorized, inaccurate, and misleading.

156.   Plaintiff and members of the Illinois Subclass acted reasonably when they purchased Kombucha Beverages based on their belief that Defendants' representations were accurate, true, and lawful.

157.   As a result of Defendants' false and misleading representations, Plaintiff Holt and the Subclass suffered injuries because (a) they would not have purchased Kombucha Beverages absent Defendants' omission of a government warning concerning the products' alcohol content; (b) they would not have purchased the products on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Kombucha Beverages due to Defendants' misrepresentations and omissions; and (d) Kombucha Beverages did not have the characteristics, benefits, or quantities as promised.

## COUNT VI
### Violation of the Michigan Consumer Protection Act (MCPA), Mich. Comp. Laws §§ 445.901, *et seq.*

158.   Plaintiff Nibbelink hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

159.   Plaintiff Nibbelink brings this claim individually and on behalf of members of the proposed Michigan Subclass against both Defendants.  Plaintiff Nibbelink also brings this claim individually and on behalf of members of the proposed Under 21 Subclass.

160.   Defendants are "person[s]" as defined in Mich. Comp. Laws § 445.902(d).

161.   Plaintiff Nibbelink and the Michigan Subclass members purchased Kombucha Beverages are consumers for purposes of the MCPA.

162.   Defendants' marketing, labeling, distributing, and selling Kombucha Beverages are "trade or commerce" as the term is defined in Mich. Comp. Laws § 445.902(g).

163.   Defendants' marketing and labeling of Kombucha Beverages as non-alcoholic, and the absence of the government mandated warning for alcoholic beverages, makes such advertising false and deceptive to a reasonable consumer, including Plaintiffs.  That is because Kombucha Beverages in fact contain above 0.5

percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law.  Further, the lack of appropriate warning on the labels of Kombucha Beverages, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy.  The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction.  Without the appropriate warning and notice that the beverage is alcoholic, Kombucha Beverages are an unreasonably dangerous product that is unfit for sale.  Defendants' failure to comply with FDCA and deceptive advertising concerning the alcohol content of Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).

164.   Further, Defendants' omissions on the beverages' labels that Enlightened Kombucha contains at least 15 percent more sugar than listed on the products' labels makes such advertising false and misleading to a reasonable consumer, including Plaintiffs.  The excess amount of sugar in the beverages also makes Kombucha Beverages less healthy than advertised.  Defendants' failure to comply with FDCA and deceptive advertising concerning the sugar content of Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).

165.   Defendants' advertising, marketing, and labeling practices violated the MCPA in Mich. Comp. Laws § 445.903(1) by misleading Plaintiff Holt and the Illinois Subclass members to believe that Kombucha Beverages are non-alcoholic

when in fact the products contain a substantial amount of alcohol, and by omitting the true amount of sugar in the beverages.

166.   Plaintiff and members of the Michigan Subclass acted reasonably when they purchased Kombucha Beverages based on their belief that Defendants' representations were accurate, true, and lawful.

167.   As a result of Defendants' false and misleading representations, Plaintiff Holt and the Subclass suffered injuries because (a) they would not have purchased Kombucha Beverages absent Defendants' omission of a government warning concerning the products' alcohol content; (b) they would not have purchased the products on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Kombucha Beverages due to Defendants' misrepresentations and omissions; and (d) Kombucha Beverages did not have the characteristics, benefits, or quantities as promised.

## COUNT VII
## Violation of the Oregon Unlawful Trade Practices Act (OUTPA), Or. Rev. Stat. §§ 646.605, *et seq.*

168.   Plaintiff Kresl hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

169.   Plaintiff Kresl brings this claim individually and on behalf of members of the proposed Oregon Subclass against both Defendants.  Plaintiff Kresl also brings this claim individually and on behalf of members of the proposed Under 21 Subclass.

170.   Defendants are "person[s]" as defined in Or. Rev. Stat. § 646.605(4).

171.   Plaintiff Kresl and the Oregon Subclass members purchased Kombucha Beverages for personal, family, or household purposes.  They are consumers for the purposes of the OUTPA.

172.   Defendants' marketing, labeling, distributing, and selling Kombucha Beverages are "goods or services" as defined in Or. Rev. Stat. § 646.605(6)(a).

173.   The OUTPA prohibits any person from "engag[ing] in an unlawful practice" in the course of the person's business by representing that "goods or services have … approval, characteristics, ingredients, uses, benefits, quantities or qualities that the … services do not have" or "goods or services are of a particular standard, quality, or grade … if … the goods or services are of another." *See id*. § 646.608(1).  A person also engages in an unlawful practice under the OUTPA by "fail[ing] to disclose any known material defect or material nonconformity" upon delivery of any goods or services. *Id.*

174.   Defendants' marketing and labeling of Kombucha Beverages as non-alcoholic, and the absence of the government mandated warning for alcoholic beverages, makes such advertising false and deceptive to a reasonable consumer, including Plaintiff.  That is because Kombucha Beverages in fact contain above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law.  Further, the lack of appropriate warning on the labels of Kombucha Beverages, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy.  The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction.  Without the appropriate warning and notice that the beverage is alcoholic, Kombucha Beverages are an unreasonably dangerous product that is unfit for sale.  Defendants' failure to comply with FDCA and deceptive advertising concerning the alcohol content of Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).

175.   Further, Defendants' omissions on the beverages' labels that Enlightened Kombucha contains at least 15 percent more sugar than listed on the products' labels makes such advertising false and misleading to a reasonable consumer, including Plaintiff.  The excess amount of sugar in the beverages also makes Kombucha Beverages less healthy than advertised.  Defendants' failure to comply with FDCA and deceptive advertising concerning the sugar content of Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).

176.   Plaintiff and members of the Oregon Subclass acted reasonably when they purchased Kombucha Beverages based on their belief that Defendants' representations were accurate, true, and lawful.

177.   As a result of Defendants' unlawful conduct and practices, Plaintiff Kresel and the Oregon Subclass suffered injuries because (a) they would not have purchased Kombucha Beverages absent Defendants' omission of a government warning concerning the products' alcohol content; (b) they would not have purchased the products on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Kombucha Beverages due to Defendants' misrepresentations and omissions; and (d) Kombucha Beverages did not have the characteristics, benefits, or quantities as promised.

## COUNT VIII
## Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL),
## 73 Pa. Stat. §§ 201-1, *et seq*.

178.   Plaintiff Roberson hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

179.   Plaintiff Roberson brings this claim individually and on behalf of members of the proposed Pennsylvania Subclass against both Defendants.

180.   Defendants are "person[s]" as defined in 73 Pa. Stat. § 201-2(2).

181.   Plaintiff Roberson and the Pennsylvania Subclass members purchased Kombucha Beverages for personal, family, or household purposes.  They are consumers for the purposes of the UTPCPL.

182.   Defendants' marketing, labeling, distributing, and selling Kombucha Beverages are "trade" and "commerce" as defined in 73 Pa. Stat. § 201-2(3).

183.   Defendants' marketing and labeling of Kombucha Beverages as non-alcoholic, and the absence of the government mandated warning for alcoholic beverages, makes such advertising false and deceptive to a reasonable consumer, including Plaintiff.  That is because Kombucha Beverages in fact contain above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law.  Further, the lack of appropriate warning on the labels of Kombucha Beverages is a serious health hazard to consumers because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy.  The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction.  Without the appropriate warning and notice that the beverage is alcoholic, Kombucha Beverages are an unreasonably dangerous product that is unfit for sale.  Defendants' failure to comply with FDCA and deceptive advertising concerning the alcohol content of Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).

184.   Further, Defendants' omissions on the beverages' labels that Enlightened Kombucha contains at least 15 percent more sugar than listed on the products' labels makes such advertising false and misleading to a reasonable consumer, including Plaintiff.  The excess amount of sugar in the beverages also

makes Kombucha Beverages less healthy than advertised.  Defendants' failure to comply with FDCA and deceptive advertising concerning the sugar content of Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).  As such, Defendants advertising, marketing, and labeling practices constituted "unfair methods of competition and unfair or deceptive acts or practices," violating the UTPCPL.

185.   Plaintiff Roberson and members of the Pennsylvania Subclass acted reasonably when they purchased Kombucha Beverages based on their belief that Defendants' representations were accurate, true, and lawful.

186.   As a result of Defendants' unlawful conduct and practices, Plaintiff Roberson and members of the Pennsylvania Subclass suffered injuries because (a) they would not have purchased Kombucha Beverages absent Defendants' omission of a government warning concerning the products' alcohol content; (b) they would not have purchased the products on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Kombucha Beverages due to Defendants' misrepresentations and omissions; and (d) Kombucha Beverages did not have the characteristics, benefits, or quantities as promised.

**COUNT VIII**
**Violation of the Ohio Consumer Sales Practices Act (OCSPA),**
**Ohio Rev. Code §§ 1345.01, <em>et seq.</em>**

187.   Plaintiff Roberson hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

188.   Plaintiff Roberson brings this claim individually and on behalf of members of the proposed Ohio Subclass against both Defendants.

189.   Defendants are "supplier[s]" as defined in Ohio Rev. Code § 1345.01(C).

190.   Plaintiff Roberson and the Ohio Subclass members are "consumer[s]," as that term is defined in Ohio Rev. Code § 1345.01(D), who purchased Kombucha Beverages for personal, family, or household purposes.

191.   Plaintiff Roberson and the Ohio Subclass members engaged in a "consumer transaction" with Defendants, as that term is defined in Ohio Rev. Code § 1345.01(A), when they purchased Kombucha Beverages.

192.   Defendants' marketing and labeling of Kombucha Beverages as non-alcoholic, and the absence of the government mandated warning for alcoholic beverages, makes such advertising false and deceptive to a reasonable consumer, including Plaintiff.  That is because Kombucha Beverages in fact contain above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law.  Further, the lack of appropriate warning on the labels of Kombucha Beverages, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy.  The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction.  Without the appropriate warning and notice that the beverage is alcoholic, Kombucha Beverages are an unreasonably dangerous product that is unfit for sale.  Defendants' failure to comply with FDCA and deceptive advertising concerning the alcohol content of Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).

193.   Further, Defendants' omissions on the beverages' labels that Enlightened Kombucha contains at least 15 percent more sugar than listed on the products' labels makes such advertising false and misleading to a reasonable

consumer, including Plaintiff.  The excess amount of sugar in the beverages also makes Kombucha Beverages less healthy than advertised.  Defendants' failure to comply with FDCA and deceptive advertising concerning the sugar content of Kombucha Beverages offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).  As such, Defendants advertising, marketing, and labeling practices constituted "unfair or deceptive act or practice in connection with a consumer transaction," violating the OCSPA.

194.   Plaintiff Roberson and members of the Ohio Subclass acted reasonably when they purchased Kombucha Beverages based on their belief that Defendants' representations were accurate, true, and lawful.

195.   As a result of Defendants' unfair or deceptive act and practices, Plaintiff Roberson and members of the Ohio Subclass suffered injuries because (a) they would not have purchased Kombucha Beverages absent Defendants' omission of a government warning concerning the products' alcohol content; (b) they would not have purchased the products on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Kombucha Beverages due to Defendants' misrepresentations and omissions; and (d) Kombucha Beverages did not have the characteristics, benefits, or quantities as promised.

## COUNT IX
## Breach of Express Warranty

196.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

197.   Plaintiffs bring this claim individually and on behalf of members of the proposed Class against both Defendants.

198.   Plaintiff Wollerman brings this claim under Massachusetts law individually and on behalf of members of the proposed Massachusetts Subclass against both Defendants.

199.   Plaintiff Nibbelink brings this claim individually and on behalf of members of the proposed Michigan Subclass against both Defendants under Michigan law.  Plaintiff Nibbelink also brings this claim individually and on behalf of members of the proposed Under 21 Subclass.

200.   Plaintiff Kresl brings this claim under Oregon law individually and on behalf of members of the proposed Oregon Subclass against both Defendants. Plaintiff Kresl also brings this claim individually and on behalf of members of the proposed Under 21 Subclass.

201.   Plaintiff Roberson brings this claim individually and on behalf of members of the proposed Pennsylvania Subclass against both Defendants under Pennsylvania law.

202.   Plaintiff Roberson also brings this claim individually and on behalf of members of the proposed Ohio Subclass against both Defendants under Ohio law.

203.   Plaintiffs Overton and Mukadam bring this claim individually and on behalf of members of the proposed Florida Subclass against both Defendants under Florida law.

204.   Plaintiff Holt brings this claim individually and on behalf of members of the proposed Illinois Subclass against both Defendants under Illinois law.

205.   Plaintiff Jones brings this claim individually and on behalf of members of the proposed Virginia Subclass against both Defendants under Virginia law.

206.   In connection with the sale of Kombucha Beverages, Defendants issue an express warranty that Kombucha Beverages contain 15 percent less sugar (listed in explicit grams of sugar per serving) than is actually present in the beverages.

207.   Defendants' affirmation of fact and promise on Kombucha Beverages' labels that the products contained at least 15 percent less sugar than actually present in the beverages became part of the basis of the bargain between Defendants and Plaintiffs and Subclass members, thereby creating express warranties that the products would conform to Defendants' affirmation of fact, representations, promise, and description.

208.   Defendants breached their express warranty because Kombucha Beverages in fact contain at least 15 percent more sugar than promised on the labels. In short, Kombucha Beverages do not live up to Defendants' express warranty.

209.   Plaintiffs and the members of the Class and State Subclasses were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased Kombucha Beverages if they had known the true facts; (b) they paid for Kombucha Beverages due to the mislabeling of the products; (c) they would not have purchased Kombucha Beverages on the same terms if they had known the true facts; (d) they paid a price premium for Kombucha Beverages due to Defendants' false warranties and affirmations of fact; and (e) Kombucha Beverages did not have the characteristics or qualities as promised.

210.   Plaintiffs served Defendants with written notice of Defendants' breach of warranties at least 30 days prior to the filing of the Complaint.

## COUNT X
## Breach of Implied Warranty of Merchantability

211.  Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

212.  Plaintiffs bring this claim individually and on behalf of members of the proposed Class against both Defendants.

213.  Plaintiff Wollerman brings this claim under Massachusetts law individually and on behalf of members of the proposed Massachusetts Subclass against both Defendants.

214.  Plaintiff Nibbelink brings this claim individually and on behalf of members of the proposed Michigan Subclass against both Defendants under Michigan law.  Plaintiff Nibbelink also brings this claim individually and on behalf of members of the proposed Under 21 Subclass.

215.  Plaintiff Kresl brings this claim under Oregon law individually and on behalf of members of the proposed Oregon Subclass against both Defendants. Plaintiff Kresl also brings this claim individually and on behalf of members of the proposed Under 21 Subclass.

216.  Plaintiff Roberson brings this claim individually and on behalf of members of the proposed Pennsylvania Subclass against both Defendants under Pennsylvania law.

217.  Plaintiff Roberson also brings this claim individually and on behalf of members of the proposed Ohio Subclass against both Defendants under Ohio law.

218.  Plaintiffs Overton and Mukadam bring this claim individually and on behalf of members of the proposed Florida Subclass against both Defendants under Florida law.

219.  Plaintiff Holt brings this claim individually and on behalf of members of the proposed Illinois Subclass against both Defendants under Illinois law.

220.  Plaintiff Jones brings this claim individually and on behalf of members of the proposed Virginia Subclass against both Defendants under Virginia law.

221.  The Uniform Commercial Code § 2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  To be "merchantable," goods must, *inter alia*, "run, within the variations permitted by the

agreement, of even kind, quality and quantity within each unit and among all units involved," "are adequately contained, packaged, and labeled as the agreement may require," and "conform to the promise or affirmations of fact made on the container or label if any."

222.   Defendant GT's Living Foods, through its acts and omissions set forth herein, in its sale, marketing, and promotion of Kombucha Beverages, impliedly warranted that (a) the Beverages were non-alcoholic so that the products could be lawfully purchased and safely consumed by anyone; and that (b) the products were a low-sugar beverage.

223.   Defendant was a merchant with respect to the goods of this kind which were sold to Plaintiffs and the Subclasses, and there was in the sale to Plaintiffs and other consumers an implied warranty that those goods were merchantable.

224.   However, Defendant breached that warranty implied in the contract for the sale of Kombucha Beverages in that the products do not contain the "quality and quantity" of kombucha beverages as impliedly warranted, and because the products do not conform to the promises made on their labels, as described herein.  Defendant also breached that implied warranty because Kombucha Beverages are an unreasonably dangerous product that cannot be used or sold without the necessary government warnings concerning alcohol.

225.   As a result of Defendant's conduct, Plaintiffs and the Subclasses did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods and because the goods were unreasonably dangerous and could not be used.

226.   Plaintiffs and members of the Class and State Subclasses were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Kombucha Beverages if they had known the true facts; (b) they paid

for Kombucha Beverages due to Defendant's implied warranties; (c) they would not have purchased Kombucha Beverages on the same terms if they had known the true facts; (d) they paid a price premium for Kombucha Beverages due to Defendant's implied warranties; and (e) Kombucha Beverages did not have the characteristics or qualities as impliedly warranted.

### COUNT XI
### Fraud

227.   Plaintiffs hereby incorporate by reference the allegations in the preceding paragraphs of this complaint.

228.   Plaintiffs bring this claim individually and on behalf of the members of each State Subclass against Defendants, alleging violations of unjust enrichment under the laws of those respective States.

229.   As discussed above, Defendants failed to disclose material facts about Kombucha Beverages, including by failing to include the government mandated alcohol warning on the products' labels and by failing to disclose the fact that the beverages contain at least 15 percent more sugar than listed on the products' labels. These omissions were made with knowledge that the labels are misleading.

230.   The omissions made by Defendants, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended and actually induced Plaintiffs and Class members to purchase Kombucha Beverages.

231.   The fraudulent actions of Defendants caused damage to Plaintiffs and State Subclass members, who are entitled to damages and other legal and equitable relief as a result.

### COUNT XII
### Unjust Enrichment

232.   Plaintiffs hereby incorporate by reference the allegations in the preceding paragraphs of this complaint.

233.   Plaintiffs bring this claim individually and on behalf of the members of each State Subclass against Defendants, alleging violations of unjust enrichment under the laws of those respective States.

234.   Plaintiffs and members of the Subclasses conferred benefits on Defendants by purchasing Kombucha Beverages.

235.   Defendants have knowledge of such benefits.

236.   Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Subclass members' purchases of Kombucha Beverages. Retention of those moneys under these circumstances is unjust and inequitable because Defendants misleadingly omitted the required government alcohol warning on the labels of Kombucha Beverages and misrepresented and omitted the true amount of sugar in Kombucha Beverages.  These misrepresentations caused injuries to Plaintiffs and members of each Subclass because they would not have purchased Kombucha Beverages had the true facts been known.

237.   Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of each Subclass is unjust and inequitable, Defendants must pay restitution to Plaintiffs and members of each Subclass for their unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class members;

b) For an order certifying the Florida Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs Mukadam and

Overton as representative of the Florida Subclass and Plaintiffs'
attorneys as Class Counsel to represent the Florida Subclass members;

c) For an order certifying the Massachusetts Subclass under Rule 23 of the
Federal Rules of Civil Procedure and naming Plaintiff Wollerman as
representative of the Massachusetts Subclass and Plaintiff's attorneys as
Class Counsel to represent the Massachusetts Subclass members;

d) For an order certifying the Virginia Subclass under Rule 23 of the
Federal Rules of Civil Procedure and naming Plaintiff Jones as
representative of the Virginia Subclass and Plaintiff's attorneys as Class
Counsel to represent the Virginia Subclass members;

e) For an order certifying the Illinois Subclass under Rule 23 of the
Federal Rules of Civil Procedure and naming Plaintiff Holt as
representative of the Illinois Subclass and Plaintiffs' attorneys as Class
Counsel to represent the Illinois Subclass members;

f) For an order certifying the Michigan Subclass under Rule 23 of the
Federal Rules of Civil Procedure and naming Plaintiff Nibbelink as
representative of the Michigan Subclass and Plaintiffs' attorneys as
Class Counsel to represent the Michigan Subclass members;

g) For an order certifying the Oregon Subclass under Rule 23 of the
Federal Rules of Civil Procedure and naming Plaintiff Kresl as
representative of the Oregon Subclass and Plaintiffs' attorneys as Class
Counsel to represent the Oregon Subclass members;

h) For an order certifying the Pennsylvania Subclass under Rule 23 of the
Federal Rules of Civil Procedure and naming Plaintiff Roberson as
representative of the Pennsylvania Subclass and Plaintiffs' attorneys as
Class Counsel to represent the Pennsylvania Subclass members;

i)  For an order certifying the Ohio Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Roberson as representative of the Ohio Subclass and Plaintiffs' attorneys as Class Counsel to represent the Ohio Subclass members;

j)  For an order certifying the Under 21 Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs Nibbelink and Kresl as representative of the Under 21 Subclass and Plaintiffs' attorneys as Class Counsel to represent the Under 21 Subclass.

k)  For an order declaring that Defendants' conduct violates the statutes referenced herein;

l)  For an order finding in favor of Plaintiffs, the Class, and the Subclasses on all counts asserted herein;

m) For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

n)  For prejudgment interest on all amounts awarded;

o)  For an order of restitution and all other forms of equitable monetary relief;

p)  For equitable or injunctive relief, including for restraining sales without truthful labeling, or as the Court may deem proper including public injunctive relief as may be permitted by applicable law; and

q)  For an order awarding Plaintiffs, the Class, and the Subclasses their reasonable attorneys' fees and expenses and costs of suit.

### **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury of all issues so triable.

1

Dated: December 15, 2023                    Respectfully submitted,

2

3                                           **BURSOR & FISHER, P.A.**

4                                           By:   */s/ Yeremey Krivoshey*
                                                       Yeremey Krivoshey
5

6                                           Yeremey O. Krivoshey (SBN 295032)
                                            1990 North California Blvd., Suite 940
7                                           Walnut Creek, CA 94596
                                            Telephone: (925) 300-4455
8                                           Facsimile:  (925) 407-2700
                                            E-Mail:  ykrivoshey@bursor.com
9

10                                          **ZIMMERMAN REED LLP**
                                            Jeff Westerman (SBN 94559)
11                                          6420 Wilshire Blvd, Suite 1080
                                            Los Angeles, CA 90048
12                                          Telephone: (877) 500-8780
                                            Facsimile:  (877) 500-8781
13                                          E-Mail:  Jeff.Westerman@zimmreed.com

14
                                            *Attorneys for Plaintiffs*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

# BURSOR & FISHER
P.A.

1990 N. California Blvd.
SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

YEREMEY KRIVOSHEY
Tel: 925.300.4455
Fax: 925.407.2700
ykrivoshey@bursor.com

April 12, 2022

*Via Certified Mail - Return Receipt Requested*

1505 Corporation 112
C T Corporation System
330 N Brand Blvd, STE 700
Glendale, CA 91203

GT's Living Foods, LLC
4646 Hampton St
Vernon, CA 90058

Re:     *Demand Letter Pursuant to California Civil Code § 1782,*
        *Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, et seq., and other applicable laws.*

To Whom It May Concern:

This letter serves as a notice and demand for corrective action on behalf of my clients, Robin Mukadar, Anastasia Overton, Heidi Wollerman, Tetrah Clark, James Buechler, Shara Jones, Margaret Holt, Alison Nibbelink, John Kresel, Ben Roberson, Rebecca Susag, Olivia Taylor (collectively, the "Consumers") , and all other persons similarly situated, arising from breaches of warranty under the Magnuson-Moss Warranty Act and violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9).  This letter also serves as notice pursuant to U.C.C. § 2-607(3)(A) and Cal. Com. Code § 2607(3)(a) concerning the breaches of express and implied warranties described herein.  This letter also serves as notice under the consumer protection statutes of the following states: Florida, Massachusetts, Maryland, New Jersey, Delaware, Virginia, Illinois, Michigan, Oregon, New York, Pennsylvania, Ohio, Arizona, and Texas, including.  Such notice under the consumer protection statutes is provided pursuant to, *inter alia*, Tex. Bus. & Com. Code §§ 17.41 et seq, Tex. Bus. & Com. Code § 17.501(a), Tex. Bus. & Com. Code § 17.505(a); the Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.903, *et seq.*; Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.*; the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.*; the Florida Deceptive and Unfair Trade Practices Act, Fla. Sta. §§ 501.201, *et seq.*; the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A, § 2(a); New York General Business Law §§ 349-50, *et seq.*; Illinois Consumer Fraud Act, §§ 815 ILCS 505/1. *et seq.*; Maryland Consumer Protection Act §§ 13-301, *et seq.*; Delaware Consumer Fraud Act §§ 2513, et seq.; Virginia Consumer Protection Act §§ 59.1-204, *et seq.*; Oregon Unlawful Trade Practices

BURSOR & FISHER
P.A.

Act ORS 646.607 *et seq*.; Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 *et seq*.; Arizona Consumer Fraud Act, A.R.S. §§ 44-1522 *et seq*.;

You have participated in the manufacture, marketing, distribution, and/or sale of GT's Enlightened kombucha and Enlightened Synergy kombucha beverages ("Kombucha Beverages"). Your Kombucha Beverages contain significantly more alcohol than the .5 percent alcohol-by-volume threshold permitted for non-alcoholic beverages by federal and state law. In fact, testing by a TTB accredited laboratory shows that Your Kombucha Beverages contain significantly more alcohol than allowed by the .5 percent standard. Further, Your Kombucha Beverages do not bear the alcohol warning mandated by 27 C.F.R. § 16, and are sold to minors and other unsuspecting consumers without an adequate warning regarding the high alcohol content of the beverages.

Further, the labels of Your Kombucha Beverages understate the amount of sugar present in the beverages.

The Consumers purchased Your Kombucha Beverages based on the belief that they are non-alcoholic beverages, as they did not contain the 27 C.F.R. § 16 warning and no identification was required to purchase the beverages. They would not have purchased Your Kombucha Beverages had they known, and had You properly disclosed, that Your Kombucha Beverages are alcoholic beverages. Within the past four years, the Consumers purchased Your Kombucha Beverages. Specifically, Robin Mukadar and Anastasia Overton purchased Your Kombucha Beverages from retail locations in Florida, Heidi Wollerman and Tetrah Clark purchased Your Kombucha Beverages from retail locations in Massachusetts, James Buechler purchased Your Kombucha Beverages from retail locations in New York, New Jersey, and Delaware, Shara Jones purchased Your Kombucha Beverages from retail locations in Virginia, Margaret Holt purchased Your Kombucha Beverages from retail locations in Illinois, Alison Nibbelink purchased Your Kombucha Beverages from retail locations in Michigan, John Kresel purchased Your Kombucha Beverages from retail locations in Oregon and New York, Ben Roberson purchased Your Kombucha Beverages from retail locations in Ohio and Pennsylvania, Rebecca Susag purchased Your Kombucha Beverages from retail locations in Arizona and Virginia, and Olivia Taylor purchased Your Kombucha Beverages from retail locations in Texas.

Indeed, Tetrah Clark, Alison Nibbelink, John Kresel, Rebecca Susag, and Olivia Taylor were under the age of 21 at the time of purchase and, by law, would not have been able to (nor would they have tried to) purchase Your Kombucha Beverages had they been appropriately labeled.

To cure the defects described above, we demand that you (1) cease and desist from continuing to mislabel GT's Kombucha and Synergy; (2) issue an immediate recall on any GT's Kombucha and Synergy products bearing misbranded labels; and (3) make full restitution to all purchasers of GT's Kombucha and Synergy of all purchase money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

BURSOR&FISHER
P.A.

1. All documents concerning the ingredients, formula, and manufacturing process for GT's Kombucha and Synergy;

2. All communications with the U.S. Food and Drug Administration concerning the product development, manufacturing, marketing and sales of GT's Kombucha and Synergy;

3. All documents concerning the advertisement, marketing, or sale of GT's Kombucha and Synergy; and

4. All communications with customers concerning complaints or comments concerning GT's Kombucha and Synergy.

We are willing to negotiate to attempt to resolve the demands asserted in this letter. If you wish to enter into such discussions, please contact me immediately. If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation. If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

Yeremey O. Krivoshey